KENNETH D. AND SANDRA G. MALAMED, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Malamed
Docket No. 4111-84
United States Tax Court
T.C. Memo 1993-1; 1993 Tax Ct. Memo LEXIS 4; 65 T.C.M. (CCH) 1693; January 4, 1993, Filed *4 For Petitioner: Mark Bernsley. For Respondent: Donna F. Herbert
FAY
FAY
MEMORANDUM OPINION FAY, Judge: This case was assigned to Special Trial Judge Larry L. Nameroff pursuant to section 7443A(b)(4) [1] and Rules 180, 181, and 183. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE NAMEROFF, Special Trial Judge: This case is before us on petitioners' Motion for Award of Reasonable Litigation Costs (the Motion) filed pursuant to Rule 231 and section 7430. The parties have filed an agreed computation under Rule 155 reflecting their disposition of disputed issues as set forth in . In the notice of deficiency, respondent determined deficiencies in petitioners' Federal income tax for 1979 and 1980 in the amounts of $ 60,062 and $ 63,359, respectively. *5 Respondent also determined additions to tax for negligence under section 6653(a) in the respective amounts of $ 3,003 and $ 3,168. The petition was timely filed on February 17, 1984, and respondent's answer was filed on March 20, 1984. On October 14, 1986, respondent filed a motion to file an amendment to answer, to which petitioners objected. Subsequently, the motion was granted, and, on January 12, 1987, the amendment to answer was filed. In the amendment to answer, respondent asserted an increased deficiency for 1980 in the amount of $ 204,910; thus, for 1980, the total deficiency in dispute was $ 268,269. Respondent also asserted additions to tax for fraud under section 6653(b) of $ 30,031 for 1979, and $ 102,455 for 1980 and, in the alternative, an increased addition to tax for negligence of $ 7,078 for 1980. Additionally, respondent asserted the applicability of section 6621(c), formerly section 6621(d), for both years. This case was consolidated as part of a test case, [2], wherein we decided various issues concerning the so-called ROC project.
*6 The following schedules relate to docket No. 4111-84 and reflect the adjustments set forth in the notice of deficiency and the amendment to answer and the resolution thereof (adjustments involving the ROC project and the trial are identified by the symbol "ROC"): 1979
ITEM
ADJUSTMENT
CORRECTED ADJUSTMENT
ROC Partnership loss
$ 11,960
$ 5,980
Mining loss
750
-0-
Partnership losses
30,266
2,051
Contributions
45,692
37,057
ROC ITC
30,563
30,563
Amount sec. 6621(c)
interest applies to
n1 60,062
-0-
1980
LMNS Partnership ROC loss
45,977
45,977
LMNS other losses
43,207
4,323
LMNS Westcliff losses
3,371
-0-
Contributions
8,748
-0-
LMNS substantiation
267,077
-0-
LMNS McMahan Brafman
29,782
2,599
ROC ITC
3,528
3,528
Amount sec. 6621(c)
interest applies to
[1] 268,269
2,046
The Court's opinion and the settlement of the various other issues in docket No. 4111-84 resulted in redetermined deficiencies in tax of $ 32,001 and $ 30,937 *7 for 1979 and 1980, respectively, no additions to tax for either fraud or negligence, and liability for increased interest under section 6621(c). Pursuant to section 7430(a), the "prevailing party" in any civil proceeding brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under the Internal Revenue Code may be awarded reasonable litigation costs incurred in connection with such proceeding. Petitioners bear the burden of proof that they are entitled to such an award. Rule 232(e). Under section 7430 (as applicable to the instant case), petitioners may be awarded a judgment for reasonable litigation costs, if they have: (1) Substantially prevailed in the litigation; (2) established that the position of the United States in the civil proceeding was unreasonable; and (3) exhausted the available administrative remedies. [3] After having met these requirements, petitioners must also then substantiate the reasonable litigation costs claimed. *8 To fall within the parameters of the statutory definition of prevailing party provided in section 7430(c)(2), petitioners must establish that: (1) The position of the United States in the civil proceeding was unreasonable; and (2) they have substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented. The term "unreasonable" is not defined in section 7430, but the legislative history provides the following guidelines for determining whether the government's position in the civil proceeding was unreasonable: (1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the court finds relevant. * * * [H. Rept. 97-404, at 12 (1981).]
In determining the point in time at which the United States is considered to have taken a position, the Ninth Circuit Court of Appeals, to which appeal of this case *9 lies, has held that "the government's position both in its prelitigation administrative proceedings and after the commencement of the litigation should be examined for reasonableness." , affg. an order of this Court. Thus, the Government may take an unreasonable position for purposes of section 7430 as early as its prelitigation administrative proceedings. Petitioner has the burden of establishing that respondent's position was unreasonable. Rule 232(e). The determination of whether respondent's position was unreasonable is based upon all the facts and circumstances as well as the legal precedents relating to the case. , affd. . The Court must "consider the basis for respondent's legal position and the manner in which the position was maintained." . The fact that respondent ultimately loses or concedes the case does not establish that the position taken was unreasonable. ; *10 , vacated and remanded on other issues . We now examine each of these factors as they bear on the various issues presented in this case. 1. All ROC Issues
In , we concluded, inter alia, that the 1979 and 1980 ROC project transactions were not shams and were entered into for profit, but that the at-risk rules contained in section 465(e) applied to limit the amount of losses which petitioners may deduct. As a result of our conclusions, the parties agreed that petitioners are limited to deductions of $ 5,980 in 1979 and zero in 1980. [4] Additionally, prior to trial, petitioners conceded both the disallowance of the ITC claimed and their claim to depreciate the software pursuant to an accelerated method of depreciation. Accordingly, it is clear that petitioners have prevailed as to neither the significant ROC issues [5] nor the amount in controversy as to such issues. Therefore, no amount can be allowed for litigation costs under section 7430 with respect to the ROC issues. *11 2. 1980 LMNS Substantiation
With respect to the LMNS partnership, respondent asserted *12 in the amendment to answer that petitioners were liable for an increased deficiency for 1980 of $ 204,910. For 1980, the LMNS partnership reported $ 635,321 in total income and $ 895,927 in deductions. Respondent questioned the $ 895,927 in deductions because "Through informal discovery, respondent requested that petitioner [sic] provide respondent with substantiation of all expenses relating to LMNS Partnership, however, petitioner has failed to provide a single document substantiating payment of expenses claimed by LMNS Partnership." Ultimately, the parties resolved this issue by settlement, with respondent conceding the full amount in controversy. Accordingly, petitioners prevailed on both the issue and the amount in controversy. Next we must consider the reasonableness of respondent's position. Respondent has the burden of proof on all new matters, such as those raised by the amendment to answer. Rule 41(b). We conclude that respondent's disallowance of the partnership's deductions based upon the failure of petitioners during informal discovery proceedings to substantiate the expenses of the partnership, when such matter was not determined in the notice of deficiency but *13 was raised by respondent by amendment to answer, is prima facie unreasonable. Respondent does not allege any facts to support a contrary conclusion, and we hold for petitioners on the issue of reasonableness as to the 1980 LMNS substantiation issue. 3. Additions to Tax for Fraud and/or Negligence
Respondent's position on this issue is based upon allegations that some of the ROC documents were backdated for a fraudulent purpose and that, as an ROC salesman, petitioner husband knew about the alleged overvaluation of the ROC software (which overvaluation ultimately was not proven by respondent). Respondent also contended that petitioner husband had known that the ROC software did not qualify for the ITC and that he fraudulently claimed the ROC deductions on the wrong partnership return. We were not persuaded by respondent's arguments and held that petitioners were not liable for either the fraud or negligence addition to tax. See . However, our holding, based on our view that the evidence did not support respondent's contentions as to the additions to tax, does not ipso facto satisfy petitioners' *14 burden of showing that respondent's position in the litigation was unreasonable as to the additions to tax. Petitioners have made no other contention as to the unreasonableness of respondent's position. Accordingly, petitioners have not shown respondent's position to have been unreasonable as to the additions to tax and are therefore not entitled to recover any litigation costs in regard thereto. 4. All Other Issues
Petitioners have not claimed entitlement to litigation costs as a result of the disposition of any other issues presented in the case. 5. Amount of Costs Recoverable
We now consider the amount, if any, of costs recoverable, bearing in mind that petitioners have prevailed as to the non-ROC LMNS substantiation issue, as to which issue respondent's position was unreasonable. The litigation costs claimed are divided into two categories: ROC issue attorney's fees and costs of $ 9,361.62 and non-ROC issue attorney's fees and costs totaling $ 24,265.38, subject to the limitations of section 7430(b)(1). As to the former amount, petitioners attached to the motion a schedule, by year, of attorney *15 and paralegal hours and fees spent on the ROC project. The fees and costs were then allocated to the various dockets involved in the test case, and $ 9,361.62 was allocated to this docket. As to the non-ROC issues, petitioners submitted an affidavit of their counsel in which the non-ROC fees and costs were explained. The claimed amount of $ 24,265.38 related to amounts expended not only in this docket, but also for docket Nos. 15788-85 and 19160-87 (which also involve these petitioners). There is no indication in this record as to the nature and extent of non-ROC issues in the other two dockets. Attorney's fees of $ 1,067.50 (based upon 8.8 attorney hours) plus costs of $ 242.05 were allegedly incurred for the initial preparation and filing of the petitions and designations of place of trial. Resolution of the non-ROC issues allegedly involved 151.8 attorney hours and 63.75 paralegal hours for a total claim of $ 22,640.65, plus costs of $ 705.18. The affidavit neither indicates the years in which the billable hours were incurred nor does it specify the billing rates for the attorney or paralegals. [6] At a hearing on the motion, counsel for petitioner neither apportioned these *16 costs to the LMNS substantiation issue nor indicated the billing rate for the paralegals. He did, however, offer that his billing rate has increased from $ 150 per hour at the beginning of this case, in 1984, to $ 225 an hour at the time of the hearing in 1991. [7] In her objection, respondent contended that the amounts claimed as litigation costs included amounts attributable to other dockets and were unreasonable, but made no further statements on this issue either in the objection or at the hearing. In , revd. *17 (Heasley I), the taxpayers litigated their liability for additions to tax asserted pursuant to sections 6653(a), 6659(a), and 6661(a), as well as increased interest under section 6621(c). They were ultimately successful on all issues and thereafter filed a motion to recover litigation costs. In , affd. in part and revd. in part (Heasley II), we held that respondent's position was unreasonable only with regard to the section 6661 addition to tax and allowed the taxpayers to recover litigation costs only as attributable to that issue. Accordingly, because four issues were presented, and respondent was unreasonable as to only one of the issues, we allowed the taxpayers to recover one-fourth of their costs. [8] On the question of the amount of time spent on each issue, we stated: "A breakdown as to issues is not required under our Rules and it is unlikely that attorneys maintain time worked on a case by issue." *18 This case is different. Petitioners' counsel apparently did maintain time records between ROC issues and non-ROC issues. Furthermore, all of the non-ROC issues were settled without the necessity of trial. In Heasley II, it was reasonable to allocate the litigation costs equally to each of the four issues, as it would be virtually impossible to allocate litigation costs on an issue-by-issue basis based on the time devoted to trial preparation, trial, briefs, etc. On the other hand, we do not believe that it is always necessarily required to prorate costs equally between issues. It is possible for an attorney to spend a substantial amount of time to prevail on a small but difficult issue (with respect to which respondent's position was reasonable) and spend very little or no time on a substantial but less difficult issue as to which respondent's position was unreasonable. Congress did not intend to allow recovery for time spent on the former. Accordingly, we have approximated petitioners' litigation costs pertaining to the LMNS substantiation issue, bearing heavily against petitioners whose inexactitude is of their own making. See . *19 First, we have eliminated the initial preparation and filing costs, as they occurred long before the substantiation issue was raised. Then, in the absence of any compelling evidence, we have divided the remaining non-ROC litigation costs by 3 to approximate the costs incurred only in this docket ($ 22,640.65 / 3 = $ 7,546.89). Finally, to reflect the seven other non-ROC issues, take into consideration some aspect of the section 6621(c) issue as it applies to non-ROC issues, and recognize that the substantiation issue was raised initially in 1986 and substantiation issues generally are not very complex, we have allowed petitioners a recovery of $ 3,500. An appropriate order and decision will be entered. Footnotes
1. All section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Included in the consolidation was docket No. 15788-85, which involved these petitioners for the years 1981 and 1982. The deficiencies in tax determined in that docket were $ 151,672 and $ 154,404 for 1981 and 1982, respectively, plus various additions to tax, as well as increased interest.↩
1. Applies to both ROC and non-ROC issues.↩
3. Respondent conceded that petitioners exhausted their administrative remedies to the extent made available.↩
4. , also held that petitioners were not entitled to any ROC deductions in 1979 and 1980 because petitioners failed to prove that they were entitled to the deductions of the Malamed Family Trust. That trust was a partner in the LMNS Street Software Partnership, which had purchased the ROC's. The parties have not addressed this difference in their stipulations for the purpose of our consideration of the motion, and it is not significant to our disposition of the motion.↩
5. Petitioners contend that because they prevailed on most of the ROC issues, they should be deemed to have substantially prevailed. The significant issue was the amount of deductions, ITC, etc. available from the ROC transactions. Although this issue may have had many subissues, for purposes of sec. 7430, the focus is solely on the most significant issue or set of issues.↩
6. For comparison purposes, we note that the schedule pertaining to the costs for the ROC issues reflects 1226.5 hours of attorney time, 672.75 hours of paralegal time, and total fees of $ 33,806.05. This suggests an aggregate billing rate of $ 17.80 per hour.↩
7. We note that 151.8 hours times $ 150 equals $ 22,770, which amount exceeds the total amount claimed for attorney and paralegal time.↩
8. The Court of Appeals for the Fifth Circuit affirmed our method of allocation, but remanded the case to allow the taxpayers to recover one-half of their costs, consistent with the Court of Appeals' opinion that respondent's position was also unreasonable with regard to the addition to tax for negligence. .↩