T.C. Memo. 2000-379

UNITED STATES TAX COURT

PHILLIP A. O'BRYON AND CYNDIE W. O'BRYON, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15704-98.                    Filed December 18, 2000.

Frederick N. Widen and Randall S. Newman, for petitioners.

Christopher A. Fisher, for respondent.

MEMORANDUM OPINION

PARR, Judge:  This case is before the Court on petitioners'
motion for recovery of attorney's fees and costs pursuant to
section 7430[1] and Rules 230 through 232.

_____

[1]References to sec. 7430 are to sec. 7430 of the Internal
Revenue Code in effect for proceedings commenced after July 30,
1996.  Unless otherwise indicated, other section references are
                                        (continued...)

We must decide whether petitioners are the prevailing party in the underlying tax case within the meaning of section 7430(c)(4), and, if so, whether the litigation and administrative costs claimed by petitioners are reasonable within the meaning of section 7430(c)(1) and (2).

Neither party has requested an evidentiary hearing on petitioners' motion, and the Court concludes that such a hearing is not necessary for the proper disposition of petitioners' motion. See Rule 232(a)(2). Accordingly, we decide petitioners' motion for recovery of attorney's fees and costs on the record of the case, including respondent's response, petitioners' reply to respondent's response, and the parties' affidavits and exhibits, which are incorporated herein by this reference.

## Background

At the time the petition in this case was filed, petitioners Phillip A. O'Bryon (Phillip) and Cyndie W. O'Bryon (Cyndie) resided in Shaker Heights, Ohio. On June 24, 1998, respondent issued petitioners a notice of deficiency for the taxable years 1991 through 1994. Respondent determined deficiencies, additions to tax, and penalties for those years as follows:

---

[1](...continued)
to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

|      |            | Addition to Tax | Penalties |            |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) | Sec. 6663 |
|------|------------|-----------------|-----------|------------|
| 1991 | $3,759     | --              | $751.80   | --         |
| 1992 | 162,222    | $23,343.45      | 5,393.40  | $101,441.25 |
| 1993 | 112,951    | 26,206.25       | 4,181.00  | 69,034.50  |
| 1994 | 26,337     | 2,082.50        | 2,505.00  | 10,359.00  |

The adjustments contained in the notice of deficiency resulted primarily from respondent's determination that:

(1) Petitioners were not entitled to deduct losses claimed in 1991, 1992, 1993, and 1994 from Diplomat Associates, an Ohio general partnership (the Diplomat issue).

(2) Petitioners failed to report in 1992, 1993, and 1994 substantial amounts of income from "illegal means" (the omitted income issue).

(3) Petitioners were not entitled to deduct a net operating loss from the O'Bryon Co. reported on Schedules E, Supplemental Income and Loss, of their 1992, 1993, and 1994 returns (the Schedule E issue).

(4) Petitioners were not entitled to deduct certain expenses reported on Schedules C, Profit or Loss From Business, of their 1991 and 1992 returns (the Schedule C issue).

(5) Petitioners' itemized deductions should be reduced each year because of the increase in their adjusted gross income each year.

In the notice of deficiency, respondent determined that Phillip (but not Cyndie) was liable for the civil fraud penalty

for the deficiency attributable to Phillip's omitted income, and that both petitioners were liable for the accuracy-related penalty for the balance of the deficiency, as well as delinquency penalties.

On September 22, 1998, petitioners timely filed a petition. In addition to asserting that respondent erred in the determinations set forth in the notice of deficiency, petitioners claimed that Cyndie was entitled to relief under section 6015 with respect to deficiencies (including interest, penalties, and other amounts) attributable to understatements of income by Phillip.

Respondent filed the answer on November 20, 1998, denying any error in the notice of deficiency and denying that Cyndie is entitled to relief under section 6015. Petitioners filed their reply on January 7, 1999.

On December 1, 1998, respondent transferred the case to respondent's Appeals Office. Shortly thereafter, Appeals officer Allan Fried was assigned the case.

On February 1, 1999, with the trial scheduled on April 26, 1999, the parties filed a joint motion requesting a continuance. We granted the joint motion on February 12, 1999. After several meetings and communications, the parties reached a full settlement without trial, and the settlement was executed by the parties on March 20, 2000. Pursuant to the agreement, Phillip

(but not Cyndie) was liable for deficiencies, additions to tax, and penalties as set forth below:

|  |  | Addition to Tax | Penalties | |
| --- | --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) | Sec. 6663 |
| 1991 | $3,759 | -- | -- | -- |
| 1992 | 53,289 | $6,996.75 | -- | $18,889.13 |
| 1993 | 38,509 | 7,595.75 | -- | 14,440.88 |
| 1994 | 21,809 | 1,629.70 | -- | 3,481.50 |

Discussion

Section 7430(a) provides that the prevailing party may be awarded reasonable administrative costs incurred in connection with an administrative proceeding within the Internal Revenue Service (IRS) and reasonable litigation costs incurred in connection with a court proceeding. For this Court to award reasonable administrative and litigation costs under section 7430, the moving party must satisfy several conjunctive requirements. Specifically, the record must show, inter alia, that:

(1) The moving party exhausted any administrative remedies available to him or her within the IRS. See sec. 7430(b)(1).

(2) The moving party did not unreasonably protract the administrative proceeding or the proceeding in this Court. See sec. 7430(b)(3).

(3) The moving party is the prevailing party. See sec. 7430(a).

Respondent concedes that petitioners have met the first two

of these requirements.  Thus, we must decide whether petitioners are the prevailing party.

To qualify as a "prevailing party", a taxpayer must establish the following:

(1) The taxpayer substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented.  See sec. 7430(c)(4)(A)(i).

(2) The taxpayer is either an individual whose net worth does not exceed $2 million, or an owner of any unincorporated business, or any partnership, corporation, etc., the net worth of which does not exceed $7 million at the time the petition is filed.  See sec. 7430(c)(4)(A)(ii); 28 U.S.C. sec. 2412(d)(2)(B) (1988).

A party, however, will not be treated as the prevailing party if the United States establishes that its position in the proceeding was substantially justified.  See sec. 7430(c)(4)(B)(i).

In this case, while respondent determined a total of $550,567.15 in deficiencies, additions to tax, and penalties for the years in issue, the March 20, 2000, settlement called for a total of $170,399.71 in deficiencies, additions to tax, and penalties.  Respondent agrees that petitioners substantially prevailed as to the amount in controversy and that they meet the net worth requirement.  Respondent contends, however, that his

position in each proceeding was substantially justified.

The position of the United States is substantially justified if it is justified to a degree that could satisfy a reasonable person and has a reasonable basis both in law and fact. See Pierce v. Underwood, 487 U.S. 552, 563-565 (1988) (interpreting similar language in the Equal Access to Justice Act, 28 U.S.C. sec. 2412 (1988)); see also Ekman v. Commissioner, 184 F.3d 522, 526 (6th Cir. 1999); Maggie Management Co. v. Commissioner, 108 T.C. 430, 443 (1997). A position has a reasonable basis in fact if there is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Pierce v. Underwood, supra at 564-565. The reasonableness of respondent's position and conduct necessarily requires considering what he knew or should have known at the time. See Rutana v. Commissioner, 88 T.C. 1329, 1334 (1987); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). In determining whether respondent acted reasonably, this Court must "consider the basis for respondent's legal position and the manner in which the position was maintained." Wasie v. Commissioner, 86 T.C. 962, 969 (1986). Respondent's position may be incorrect but substantially justified if a reasonable person could think it correct. See Pierce v. Underwood, supra at 566 n.2.

"The fact that the Commissioner eventually loses or concedes a case does not by itself establish that the position taken is

unreasonable."  Maggie Management Co. v. Commissioner, supra at 443; see also Broad Ave. Laundry & Tailoring v. United States, 693 F.2d 1387, 1391-1392 (Fed. Cir. 1982); Sokol v. Commissioner 92 T.C. 760, 767 (1989).  However, it remains a relevant factor in determining the degree of the Commissioner's justification. See Maggie Management Co. v. Commissioner, supra.

In deciding this issue, we must identify the point in time at which the United States is first considered to have taken its position, and then decide whether the position from that point forward was substantially justified.  The "substantially justified" standard applies to a position that the United States took in an administrative proceeding and a judicial proceeding respectively.  See sec. 7430(c)(7)(A) and (B).

The position of the United States in an administrative proceeding means the position taken as of the earlier of the date of the receipt by the taxpayer of the Appeals decision or the date of the notice of deficiency.  See sec. 7430(c)(7)(B).  In the present case, respondent took a position in the administrative proceeding as of June 24, 1998, the date of the notice of deficiency.

The position of the United States in a judicial proceeding, for purpose of considering litigation costs, generally refers to the position taken as of the date when the Commissioner files an answer to a taxpayer's petition.  See Maggie Management Co. v.

Commissioner, supra at 442.  Respondent's position in the proceeding before this Court was established on November 20, 1998, the date respondent filed the answer.  In the present case, it is not necessary to analyze respondent's position separately, because respondent took the same position on each issue in both the notice of deficiency and the answer.  See Swanson v. Commissioner, 106 T.C. 76, 87 (1996).

We now consider whether respondent's position was substantially justified.  We analyze respondent's position in the context of the circumstances that caused respondent to take that position and the manner in which respondent maintained that position.  See Wasie v. Commissioner, supra at 969; Kahn-Langer v. Commissioner, T.C. Memo. 1995-527; Amann v. Commissioner, T.C. Memo. 1993-542, affd. without published opinion 40 F.3d 1235 (1st Cir. 1994).  We may also consider:  (1) Whether the Government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case; (2) whether the Government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation; and (3) such other factors as the Court finds relevant.  See Sher v. Commissioner, 89 T.C. 79, 85 (1987), affd. 861 F.2d 131 (5th Cir. 1988).

Our analysis of what caused respondent to take a position

may include events preceding the date the notice of deficiency was issued. See <u>Williford v. Commissioner</u>, T.C. Memo. 1994-135. The reasonableness of respondent's position and conduct necessarily requires considering what respondent knew at the time. See <u>Rutana v. Commissioner</u>, <u>supra</u> at 1334; <u>DeVenney v. Commissioner</u>, <u>supra</u> at 930; <u>Triplett v. Commissioner</u>, T.C. Memo. 1998-313. We ask whether respondent knew or should have known that his position was invalid at the onset. See <u>Nalle v. Commissioner</u>, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182; <u>Estate of Williamson v. Commissioner</u>, T.C. Memo. 1997-77.

For a position to be substantially justified, there must be substantial evidence to support it. See <u>Maggie Management Co. v. Commissioner</u>, 108 T.C. at 443. It does not require a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See <u>Pierce v. Underwood</u>, <u>supra</u> at 564-565 (citing <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).

We have previously adopted an issue-by-issue approach to the awarding of costs under section 7430, apportioning the requested awards between those issues for which respondent was substantially justified and those issues for which respondent was not substantially justified. See <u>Swanson v. Commissioner</u>, <u>supra</u> at 102; <u>Austin v. Commissioner</u>, T.C. Memo. 1997-157. We follow

that approach here and separately discuss whether respondent's position on each issue was substantially justified.

From the time the notice of deficiency was issued to the March 20, 2000, settlement, the parties disagreed as to the following substantive matters:  (1) Whether amounts that Phillip received by illegal means and failed to report on the returns for tax years 1992 through 1994 should be reduced by the amounts that he claimed to have repaid to his victims; (2) whether Phillip was subject to section 6663 civil fraud penalties for the unreported income for tax years 1992 through 1994; (3) whether Cyndie qualified for relief under section 6015 on deficiencies, additions to tax, and penalties resulting from Phillip's embezzlement income; (4) whether petitioners were entitled to claim deductions for Schedule E losses for tax years 1992 through 1994 in connection with Phillip's S corporation used in his illegal activities; (5) whether Phillip was entitled to claim a deduction for section 1231 loss for tax year 1991 with respect to his interest in an unsuccessful partnership, and to carry over that loss to subsequent tax years as net operating losses; and (6) whether petitioners were entitled to claim certain Schedule C deductions for tax years 1991 and 1992.

Omitted Income From Phillip's Fraudulent Ponzi Scheme

From 1990 to 1991 or 1992, Phillip operated a Ponzi scheme through joint business ventures with another individual.

Thereafter, he operated the scheme through his wholly owned S corporation, the O'Bryon Co. As part of the scheme, Phillip sold nonexistent certificates of deposit (CD's) to various individuals. Phillip used the funds he received in the scheme to pay individuals who thought they owned CD's that had matured, to finance his other businesses, and to pay for his personal expenses.

On March 30, 1995, Phillip was charged with grand theft under Ohio law. The prosecution alleged that Phillip had operated a fraudulent Ponzi scheme involving fictitious CD's. Phillip pleaded guilty to the charges. On April 28, 1995, the State court judge sentenced Phillip to 2 years in prison and ordered him to pay $468,834 in restitution to the individuals he had defrauded.

In the notice of deficiency, respondent determined that petitioners failed to report embezzlement income of $423,850 for 1992, $289,578 for 1993, and $46,700 for 1994.

In the petition, petitioners asserted that respondent erred in determining that Phillip received funds by illegal means in the amounts set forth in the notice of deficiency. Petitioners asserted that the money Phillip received in the Ponzi scheme was not includable in his gross income. Petitioners asserted in the alternative that, if the money did constitute gross income, then petitioners should be allowed a deduction under section 162 in

the year of repayment for amounts repaid to Phillip's victims. Petitioners further asserted in the petition that Phillip believed that during the calendar years 1992, 1993, and 1994, the amounts of the repayments exceeded the amounts of funds he wrongfully used in such years.

Respondent timely filed an answer, and the case was scheduled for the trial session commencing April 26, 1999. On February 1, 1999, the parties requested and were granted a continuance because there was not enough time (1) to allow petitioners to assemble and present all the documentation and information needed to support their position with respect to various issues, and (2) for respondent to properly review, consider, and make a determination with respect to various issues based upon the documentation and information expected to be presented by petitioners.

On January 28, 1999, petitioners' counsel met with Mr. Fried, the Appeals officer, to discuss the case. Petitioner's counsel argued that the embezzlement income should be reduced by the amounts that Phillip had repaid to the individuals he had defrauded. Petitioners' counsel told Mr. Fried that petitioners would provide evidence of the repayments. Despite repeated inquiries and requests from Mr. Fried, petitioners did not deliver all the promised documents showing the repayments until November 9, 1999. Patricia Tyers, a revenue agent, assisted Mr.

Fried in reviewing the voluminous documents and information supplied by petitioners.

After Mr. Fried and Ms. Tyers reviewed the documents and met with petitioners' counsel several more times, respondent agreed to offset the embezzlement income by the amounts repaid to some of Phillip's victims. The resulting embezzlement income adjustments, as reflected in the March 20, 2000, settlement, were $248,842 for 1992, $147,445 for 1993, and $32,450 for 1994.

On the issue of the omitted income from Phillip's fraudulent Ponzi scheme, we conclude that respondent's position was substantially justified.

Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving entitlement to any deduction claimed. See Deputy v. du Pont, 308 U.S. 488, 493 (1940); Hradesky v. Commissioner, 540 F.2d 821 (5th Cir. 1976), affg. 65 T.C. 87 (1975). It is well settled that a taxpayer is required to keep permanent books of account and records to substantiate the income and expenses reported on his income tax return. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Generally, when a taxpayer does not produce substantiation of claimed deductions, disallowance is proper. See Roberts v. Commissioner, 62 T.C. 834, 836-837 (1974); Amann v. Commissioner, T.C. Memo. 1993-542; Schnelten v. Commissioner, T.C. Memo. 1993-264. It is reasonable for respondent not to concede the adjustments until he has

received and verified adequate substantiation for the items in question.  See Simpson Fin. Servs., Inc. v. Commissioner, T.C. Memo. 1996-317.  Respondent is given a reasonable period of time in which to resolve a factual issue after receiving all relevant information.  See Sokol v. Commissioner, 92 T.C. 760, 765-766 n.10 (1989).

Respondent's position was that petitioners failed to report income from Phillip's illegal Ponzi scheme.  That position was based in fact.  Petitioners did not include the income on their returns.  The adjustment to income was reduced not because Phillip received less money than the amounts determined by respondent, but solely because petitioners finally substantiated the repayments made by Phillip during the years at issue.  Even in the petition, petitioners failed to specify the amount of the repayments made each year and merely asserted that Phillip believed the repayments equaled the amounts received.  It took several requests from and meetings with Mr. Fried before all the voluminous documentation required to substantiate the claimed deductions was supplied to respondent.  This documentation was not produced during the examination.

Petitioners did not supply evidence substantiating their claim as to the alleged repayments until November 9, 1999, nearly 1 year after respondent filed the answer and over 9 months after petitioners promised to provide such evidence.  See Harrison v.

Commissioner, 854 F.2d 263 (7th Cir. 1988) (concession some 6 months after the answer was filed, after the Government had an opportunity to verify information, held reasonable), affg. T.C. Memo. 1987-52; Sliwa v. Commissioner, 839 F.2d 602, 609 (9th Cir. 1988) (reasonable for concession not to have been made until the IRS had opportunity to review records obtained some 6 months prior), affg. an unreported opinion of this Court; Ashburn v. United States, 740 F.2d 843 (11th Cir. 1984) (11-month delay in conceding case not unreasonable); White v. United States, 740 F.2d 836, 842 (11th Cir. 1984) (Government's concession of issue 3 months after issue raised was reasonable).

Petitioners suggest that respondent was aware of the restitution ordered by the State court after Phillip pleaded guilty to grand theft, and assert, therefore, that respondent knew that Phillip had made the repayments. Petitioners' contention is wanting in logic. The State court issued the order in 1995. Any repayments made as a result of the order were necessarily made after the years at issue in this case and, therefore, would not be deductible in the years at issue. Based on the facts available to respondent, we find it reasonable for respondent not to offset the embezzlement income with the alleged payments until the repayments were substantiated.

Fraud Penalty

Section 6663(a) provides that "If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud."  In the notice of deficiency, respondent determined section 6663 civil fraud penalties against Phillip, at the statutory rate of 75 percent of the deficiency attributable to the 1992, 1993, and 1994 embezzlement income.  In entering the March 20, 2000, settlement, the parties agreed that Phillip was liable for the civil fraud penalty under section 6663 at a rate of 37.5 percent, rather than the statutory 75 percent.

Respondent asserts that Phillip conceded the fraud penalty. Petitioners contend that Phillip agreed to permit the assessment of an amount equal to one-half of the amount of the fraud penalty but never conceded that the returns were fraudulent.  We think that by agreeing that Phillip was liable for the fraud penalty, even at the reduced rate, petitioners have conceded that the returns were fraudulent.

Furthermore, a review of the record of this case reveals that respondent was reasonable in determining that petitioners' omission of income from the Ponzi scheme was attributable to fraud.

To establish fraud, respondent had to prove by clear and convincing evidence that Phillip intended to evade the payment of taxes. See sec. 7454(a); Rule 142(a); <u>Traficant v. Commissioner</u>, 884 F.2d 258, 264 (6th Cir. 1989), affg. 89 T.C. 501 (1987). The existence of fraud is a factual question to be resolved upon consideration of the entire record. See <u>Rowlee v. Commissioner</u>, 80 T.C. 1111, 1123 (1983); <u>Stone v. Commissioner</u>, 56 T.C. 213, 224 (1971). A taxpayer's entire course of conduct may establish the requisite fraudulent intent. See <u>Rowlee v. Commissioner</u>, <u>supra</u>; <u>Stone v. Commissioner</u>, <u>supra</u>. Because fraud can rarely be established by direct proof of a taxpayer's intent, fraud may be proven by circumstantial evidence. See <u>Rowlee v. Commissioner</u>, <u>supra</u>.

Fraud may be inferred from any conduct, the likely effect of which would be to mislead or conceal. See <u>Spies v. United States</u>, 317 U.S. 492, 499 (1943). The courts have relied on numerous indicia of fraud in deciding cases under section 6663 and its predecessor section 6653(b) including: (1) Failure to report income over an extended period of time; (2) failure to file a tax return; (3) failure to furnish the Government with access to records; (4) failure to keep adequate books and records; (5) engaging in illegal activity; (6) concealment of bank accounts from an Internal Revenue agent; (7) giving implausible explanations of conduct; (8) willingness to defraud

another in a business transaction; and (9) the taxpayer's experience and knowledge. See Solomon v. Commissioner, 732 F.2d 1459, 1461-1462 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603; see also Kalo v. Commissioner, T.C. Memo. 1996-482, affd. without published opinion 149 F.3d 1183 (6th Cir. 1998); Conti v. Commissioner, T.C. Memo. 1992-616, affd. 39 F.3d 658 (6th Cir. 1994); Zack v. Commissioner, T.C. Memo. 1981-700, affd. 692 F.2d 28 (6th Cir. 1982).

Respondent should not pursue litigation of a civil fraud penalty unless he has a reasonable basis for believing that he could prove fraud by clear and convincing evidence. See Rutana v. Commissioner, 88 T.C. 329, 1337-1338 (1987); Don Casey Co. v. Commissioner, 87 T.C. 847, 862 (1986). In this case, however, we think it is highly likely that respondent would have successfully proved Phillip's fraud by clear and convincing evidence. Phillip engaged in the fraudulent Ponzi scheme, defrauded his clients, failed to report on his tax returns for multiple years the substantial income received from that illegal activity, and failed to keep accurate records. Thus, respondent's position was substantially justified.

## Relief From Joint Liability

In the petition, Cyndie claimed that she was entitled to relief under section 6015 and should be relieved of liability for tax attributable to understatements of taxable income by Phillip.

In support of her claim, Cyndie alleged that, at the time of signing the joint income tax returns for the years in issue, she did not know and had no reason to know of Phillip's understatement of tax and that it would be inequitable to hold her liable for deficiencies attributable to such understatements. In the answer, respondent denied or denied for lack of sufficient information Cyndie's factual allegations with respect to her claim for relief under section 6015.

On March 15, 2000, respondent's counsel, the Associate District Counsel, and the Appeals officer interviewed Cyndie for the first time and evaluated her credibility concerning her claim. Prior to this meeting, the parties had devoted most of their discussions to the issue of the embezzlement income offset. Cyndie did not supply any evidence to establish her qualification for section 6015 relief until the meeting on March 15, 2000. After the 2-hour interview, respondent concluded that Cyndie qualified for section 6015 relief on all issues (not merely on that of the embezzlement income) for all years in issue. The parties' settlement, signed 5 days later, reflects respondent's concession on the issue of section 6015 relief. Petitioners assert that respondent belatedly conceded the merits of Cyndie's position.

Section 6015(a) permits an individual who has filed a joint return to elect to seek relief from joint and several liability

provided the taxpayer meets the requirements of section 6015(b).
The requirements of section 6015(b) that must be met are as
follows:

> (A) a joint return has been made for a taxable
> year;
>
> (B) on such return there is an understatement of
> tax attributable to erroneous items of 1 individual
> filing the joint return;
>
> (C) the other individual filing the joint return
> establishes that in signing the return he or she did
> not know, and had no reason to know, that there was
> such understatement;
>
> (D) taking into account all the facts and
> circumstances, it is inequitable to hold the other
> individual liable for the deficiency in tax for such
> taxable year attributable to such understatement; and
>
> (E) the other individual elects (in such form as
> the Secretary may prescribe) the benefits of this
> subsection not later than the date which is 2 years
> after the date the Secretary has begun collection
> activities with respect to the individual making the
> election, * * *

Thus, as pertinent here, Cyndie would not be relieved from
joint and several liability under section 6015(b) to the extent
she had actual knowledge, or reason to know, that there was
income from Phillip's Ponzi scheme that was omitted from the
1992, 1993, and 1994 joint returns.  Where relief is requested
with respect to the omission of income (the situation involved
herein), this Court has concluded that, where a spouse seeking
relief has actual knowledge of the underlying transaction that
produced the omitted income, section 6015 relief is denied.  See

Cheshire v. Commissioner, 115 T.C. 183 (2000).

It was Cyndie's burden to prove that she was entitled to relief under section 6015. The determination of the applicability of section 6015 can only be made through an examination of all the facts and circumstances of the case, including an assessment of the credibility of the spouse claiming relief under section 6015. We think that respondent was reasonable in requiring more evidence than Cyndie's mere assertions of eligibility for section 6015 relief or at least some independent corroboration of those assertions. See Sliwa v. Commissioner, 839 F.2d at 608. Respondent was not required to concede this case before receiving the documentation necessary to prove Cyndie's contentions, particularly when there were credibility issues to be resolved. See Brice v. Commissioner, T.C. Memo. 1990-355, affd. without published opinion 940 F.2d 667 (9th Cir. 1991).

We find nothing in the record that indicates that Cyndie produced anything other than an assertion of her eligibility. During the years in issue, Cyndie and Phillip maintained at least three joint checking accounts into which Phillip deposited some of the funds received from his fraudulent scheme. He deposited $101,800 into the joint accounts in 1992, $359,378 in 1993, and $33,700 in 1994.

Furthermore, the notice of deficiency asserts a delinquency penalty for the tax years 1992, 1993, and 1994. The explanation indicates that the 1992 return, due October 15, 1993, was not filed until January 7, 1994; the 1993 return, due October 15, 1994, was not filed until October 19, 1995; and the 1994 return, due October 15, 1995, was not filed until November 27, 1995. Phillip was charged on March 30, 1995, with grand theft from the operation of his Ponzi scheme. On April 28, 1995, having entered a guilty plea to the charges, the State court sentenced Phillip to 2 years in prison and ordered him to pay $468,834 in restitution. Absent more than Cyndie's mere assertion of eligibility for relief under section 6015, it seems highly unlikely that Cyndie did not know about Phillip's Ponzi scheme when she signed the returns for the tax years 1993 and 1994 after Phillip was sentenced by the State court.

Given the information available to respondent, including the fact that Phillip deposited funds received from his criminal activity into petitioners' joint checking accounts throughout the years in issue, and the joint returns for 1993 and 1994 were filed after Phillip was convicted on the State theft charges, we find respondent's position reasonable and substantially justified. It is inappropriate to award petitioners litigation costs attributable to Cyndie's section 6015 claim for relief under these circumstances. See Krafsky v. Commissioner, T.C.

Memo. 1991-579; <u>Creske v. Commissioner</u>, T.C. Memo. 1990-318, affd. 946 F.2d 43 (7th Cir. 1991).

<u>Schedule E Losses</u>

In the notice of deficiency, respondent disallowed deductions for Schedule E losses in the amounts of $39,002 for 1992, $72,886 for 1993, and $93,116 for 1994 that primarily were attributable to the O'Bryon Co. Respondent based the determination on the fact that petitioners had failed to establish that the losses were sustained or that, if such losses were sustained, they were deductible losses under any provision of the Code. In particular, petitioners failed to establish that Phillip had sufficient basis in the S corporation stock to allow the losses claimed.

During the audit, petitioners provided respondent with a copy of the O'Bryon Co.'s filed tax return for 1992. Respondent refused to accept the return as sufficient evidence of Phillip's basis in the stock. During their settlement negotiations, in order to establish Phillip's basis in the stock, petitioners provided Mr. Fried with a copy of the O'Bryon Co.'s unfiled 1993 tax return. Although no evidence was produced to show how Phillip's basis in the corporation was calculated, Mr. Fried accepted both tax returns for the purpose of establishing Phillip's basis in the company. Petitioners, however, failed to provide any evidence to establish that they had sufficient basis

for 1994.  In the parties' settlement, respondent conceded the 1992 and 1993 Schedule E loss deductions but disallowed a deduction for the 1994 Schedule E loss.

Although Mr. Fried agreed to accept the 1992 and 1993 tax returns for the O'Bryon Co. for the purpose of establishing Phillip's basis, we hardly think those returns, by themselves, were sufficient for that purpose.  A reasonable person would doubt the credibility of the tax returns supplied, considering that Phillip, as its sole shareholder, used the O'Bryon Co. as a vehicle to engage in fraudulent activities.

In addition, petitioners failed to provide any evidence establishing Phillip's 1994 basis in the company.  Petitioners contend that they produced documentation establishing the 1994 basis on March 16, 2000, but that a failure in communication between respondent's Appeals officer and counsel resulted in petitioners' reluctant concession of the Schedule E deductions for that year.  Petitioners' argument is unpersuasive, especially in light of the tardiness of the alleged production.

No evidence was produced to support the particular items claimed on the corporation's return or to show how Phillip's basis in the corporation was calculated.  Whenever there is a factual determination with respect to a tax return, respondent is not obliged to concede the case until the necessary documentation is received to prove the taxpayer's contentions and claims.  See

Sokol v. Commissioner, 92 T.C. 760, 765-766 n.10 (1989); Sher v. Commissioner, 89 T.C. 79, 87 (1989); DeVenney v. Commissioner, 85 T.C. 927 (1985); see also Johnson v. Commissioner, T.C. Memo. 1991-447; Spirtis v. Commissioner, T.C. Memo. 1985-44.

The fact that respondent's counsel ultimately decided to concede the case may reflect a consideration of a variety of factors--including litigation risks--which earlier were not considered or which were not weighed as heavily by respondent. Furthermore, the record shows that the parties were actively engaged in negotiations throughout the litigation process, and that respondent did not unreasonably delay acting upon any information which he received from petitioners.

Accordingly, we find respondent's position denying Schedule E loss deductions for the tax years 1992 through 1994 reasonable and substantially justified.

Deductions for Losses Arising From Diplomat Associates

The parties disagreed as to whether petitioners were entitled to claim a deduction for section 1231 loss resulting from an unsuccessful operation of Diplomat Associates, an accrual-method partnership that Phillip and his associates formed in 1986 in order to engage in an apartment rental business. Diplomat Associates purchased an apartment building for approximately $1.4 million, the cost of which was financed in large part by a mortgage made to the partnership.

In 1990, Diplomat Associates, then a two-person partnership, defaulted on its mortgage notes. The creditor, a mortgage lender unrelated to either partner, foreclosed upon the apartment building. On May 30, 1991, the building was sold at auction for $544,000. Subsequently, the creditor obtained a deficiency judgment of approximately $870,000 against Diplomat Associates and its two partners on the outstanding balance of the notes. By the end of 1991, Diplomat Associates had no assets and only a liability for the unpaid balance of the notes.

Diplomat Associates filed a return for 1991, purporting to be a final return. On that return, Diplomat Associates reported a section 1231 loss of $352,061, the difference between the partnership's remaining tax basis in the property ($896,061) and the foreclosure sale price. On his 1991 tax return, Phillip claimed a deduction for $176,031, one-half of the loss.

In the notice of deficiency, respondent disallowed the entire section 1231 loss deduction on the ground that Phillip had not disposed of his entire interest in Diplomat Associates within the meaning of section 469(g). Additionally, in the notice of deficiency, respondent disallowed net operating loss (NOL) deductions of $32,322 for 1992, $70,982 for 1993, and $89,466 for 1994. The NOL deductions were attributed to suspended passive activity losses from Diplomat Associates carried over from years prior to 1991. Respondent disallowed each NOL deduction on the

ground that Phillip's partnership interest had not been fully disposed of at the end of each year in issue.

Petitioners' representative submitted a protest dated January 2, 1996, claiming that the partnership had ceased to exist at the end of 1991, and that Phillip had disposed of his entire interest in the partnership. Respondent dismissed the argument and maintained the position that Phillip had not completely disposed of his partnership interest. Respondent conceded this issue, however, after petitioners' counsel presented the same argument and resubmitted the January 2, 1996, protest. The parties' settlement of March 20, 2000, reflects this concession by respondent.

Section 469 limits a taxpayer's ability to deduct losses from passive activities. Generally, a taxpayer may deduct losses from passive activities from income from passive activities only and may not use such losses to offset income from nonpassive activities. See sec. 469(a), (d). Passive activity includes any rental activity. See sec. 469(c)(2).

Section 469(g)(1) provides for an exception to this passive activity loss disallowance rule: If the taxpayer disposes of his or her entire interest in any passive activity in a fully taxable transaction between unrelated parties, any loss from that activity is not treated as from a passive activity.

Diplomat Associates engaged in an apartment rental activity, and its partners were subject to the section 469 disallowance rule. Phillip could not deduct any loss incurred by Diplomat Associates unless he disposed of his entire interest in the partnership in a fully taxable transaction.

Petitioners assert that respondent was not substantially justified, because respondent conceded the issue on the basis of the same argument petitioners submitted in the audit.

Respondent took the position that Phillip did not dispose of his entire interest in the partnership because the outstanding balance of the loan remained unpaid. Respondent asserts that the partnership did not report any income from the discharge of indebtedness. Respondent, however, did not determine in the notice of deficiency that the partnership had cancellation of indebtedness. Nor did respondent raise that issue in the answer to the petition. Respondent has not provided the Court with petitioners' legal argument that was first rejected and then accepted. Respondent has not provided any legal argument or authority supporting his position that Phillip had not disposed of his entire interest in the partnership.

We find that respondent has not established that he was substantially justified in taking the position that Phillip had not disposed of his entire interest in the partnership. Therefore, we shall allow attorney's fees related to this issue.

Miscellaneous Schedule C Deductions

In the notice of deficiency, respondent disallowed a number of Schedule C deductions that petitioners claimed on their 1991 and 1992 tax returns. They include investment losses, interest expenses, travel expenses, commission expenses, and dues. In the March 20, 2000, settlement, petitioners conceded these deductions in full. We conclude that respondent's position was substantially justified.

Amount of Reasonable Attorney's Fees and Costs

We now consider the amount of costs that petitioners may recover. Petitioners were the prevailing party with respect to issues involving the deductibility of losses from Diplomat Associates. They were not, however, the prevailing party with respect to any other issues.

Administrative costs are those incurred in connection with an administrative proceeding within the IRS. Sec. 7430(a)(1), (c)(2). Reasonable administrative costs consist of any fees or expenses imposed by the IRS, the reasonable expenses of necessary expert witnesses, the reasonable cost of any necessary study, analysis or report and reasonable fees paid or incurred for the services of attorneys. See sec. 7430(c)(2). Attorney's fees are those "for the services of an individual (whether or not an attorney) who is authorized to practice before the Tax Court or before the [IRS]". Sec. 7430(c)(3).

For costs incurred on or before January 18, 1999, reasonable administrative costs include only those costs incurred on or after the earlier of (1) the date of the receipt by taxpayer of the notice of decision of the IRS Office of Appeals, or (2) the date of the notice of deficiency. See sec. 7430(c)(2).

Litigation costs are those incurred in connection with a judicial proceeding. See sec. 7430(a)(2), (c)(1). Reasonable litigation costs consist of reasonable court costs, the reasonable expenses of necessary expert witnesses, the reasonable cost of any necessary study, analysis or report, and reasonable fees paid or incurred for the services of attorneys. See sec. 7430(c)(1).

Rule 232(d)(1) requires that, if the parties disagree as to the reasonable amount of attorney's fees, counsel for the party moving for such fees and costs submit, among others, a detailed summary of the time expended by each individual for whom fees are sought, including a description of the nature of the services performed during each period of time summarized.

The billing statements, in large part, do not indicate on which of the issues each of the attorneys and the paralegal worked in each time period. Accordingly, we approximate petitioners' costs incurred in connection with the Diplomat Associates losses, bearing heavily against petitioners whose inexactitude is of their own making. See Cohan v. Commissioner,

39 F.2d 540, 544 (2d Cir. 1930); see also <u>Malamed v.</u>
<u>Commissioner</u>, T.C. Memo. 1993-1 (quoting <u>Cohan</u> in the section
7430 context).

First, petitioners may not recover for attorney's fees and
costs incurred before June 24, 1998, the date of the notice of
deficiency.  See sec. 7420(c)(2).  Second, petitioners may
recover reasonable fees and reasonable costs specifically and
clearly incurred in connection with the Diplomat Associates
issues.  Third, petitioners may not recover fees and costs
clearly unrelated to the Diplomat Associates issues.  Fourth,
petitioners may recover only a portion of the remaining fees and
costs for which specific issues were not identified.

<u>Attorney's Fees</u>

Petitioners' counsel submitted a billing statement showing
the amount of time each of attorneys Frederic N. Widen, Caleb J.
McArthur, Randy S. Newman, and M. Collette Gibbons expended in
representing petitioners in both the administrative and the court
proceedings.

The billing statement indicates that Mr. Widen's hourly rate
was $275 from 1998 to January 28, 1999, $280 from March 17, 1999,
through January 28, 2000, and $290 from February 4, 2000, through
March 20, 2000; that Mr. McArthur's rate was $110 throughout
1998; that Mr. Newman's rate was $120 from March 31, 1999,
through September 13, 1999 and $130 from February 4, through

March 17, 2000; and that Ms. Gibbons' rate was $265 on March 7, 2000.

Absent special factors, an award relating to attorney's fees incurred in 1998 is limited to $120 per hour; for calendar year 1999, the attorney fee award limitation under section 7430(c)(1)(B)(iii) is $120 per hour for fees incurred on or before January 18, 1999 and $130 per hour for fees incurred after January 18, 1999; and for fees incurred in the calendar year 2000, the attorney fee award limitation is $140 per hour. See sec. 7430(c); Rev. Proc. 97-57, 1997-2 C.B. 584; Rev. Proc. 98-61, 1998-2 C.B. 811; Rev. Proc. 99-42, 1999-46 I.R.B. 568.

We find that no special factor justifies awarding fees for attorneys' services at an hourly rate greater than the statutory limit. Accordingly, we limit Mr. Widen's and Ms. Gibbons' hourly rate to the $120, $130, and $140 for pertinent periods. We note that Mr. McArthur's and Mr. Newman's hourly rates were under the statutory caps and find them reasonable.

Mr. Widen billed 1.8 hours for services provided prior to the date of notice of deficiency, June 24, 1998. Those fees are not recoverable. See sec. 7430(c)(2).

In late January 2000, respondent notified petitioners' counsel that he anticipated that he would concede the Diplomat Associates issue. By early March 2000 a final settlement had not been reached. Respondent and petitioners included a discussion

of the Diplomat Associates issue in their trial memoranda. Time billed after January 2000 until early March (25.3 hours) when the attorneys began preparing the trial memoranda is unrelated to the Diplomat Associates issue, and attorney's fees for that period will not be awarded. Some fees billed for time after early March are related to general matters that include in part the Diplomat Associates issue. Such time is related to the preparation of the trial memorandum, meetings with respondent's counsel to discuss the final settlement, and attendance at the call of the calendar at the trial session. Time related to the attorneys' effort to secure petitioners' payment of the attorney's fees, however, is not related to the Diplomat Associates issue.

Petitioners' attorneys billed the following hours aggregating 52.9 hours for work unrelated to the Diplomat Associates issue:

| Date | Hours | Description |
|---|---|---|
| 12/03/1997 to 3/05/1998 | 1.8 | Prior to notice of deficiency |
| 8/28/1998 | 0.8 | No description |
| 8/31/1998 | 0.9 | Research embezzlement income used to repay prior embezzled funds |
| 3/17/1999 | 0.5 | Review IRS letter re: 1998, 1989 |
| 3/23/1999 | 0.1 | Intra office conference regarding protest |
| 8/20/1999 | 0.6 | Review spreadsheet |
| 10/11/1999 | 0.1 | Telephone call requesting data |
| 10/19/1999 | 0.8 | Review data submitted by client |
| 11/08/1999 | 0.2 | No description |
| 11/30/1999 | 1 | Meeting with Tyers regarding examination of books |
| 12/02/1999 | 1 | Meeting with IRS agent |
| 12/03/1999 | 1 | Meeting with IRS agent |
| 1/12/2000 | 0.4 | Telephone conference re: cash flow issues |
| 2/04/2000 to 3/01/2000 | 25.3 | After respondent conceded issue |
| 3/02/2000 | 1 | Research trade or business |
| 3/07/2000 | 0.3 | Conference regarding pledge of account receivable to secure fees |
| 3/08/2000 | 3.5 | Fee and security agreement |
| 3/11/2000 | 0.3 | Security agreement and financing statements |
| 3/13/2000 | 2.5 | Research fraud penalty |
| 3/14/2000 | 1.2 | Telephone conference with Cyndie |
| 3/14/2000 | 2 | Research fraud |
| 3/15/2000 | 4 | Meeting with Cyndie, IRS |
| 3/15/2000 | 2 | Meeting with IRS re: section 6015 |
| 3/17/2000 | 1.5 | Research collateral estoppel |
| 3/20/2000 | 0.1 | Telephone call to State of Ohio |
| Total hours | 52.9 | |

We do not award fees for these 52.9 hours.

Petitioners' attorneys billed 116.8 hours on general matters, such as reviewing the notice of deficiency, drafting the petition, preparing the trial memorandum, meeting with respondent's counsel to discuss the final settlement, and reviewing the final settlement, that do not identify the amount

time specifically related to the Diplomat Associates issue.  Of the hours specifically identified as relating to a specific issue (either specifically related to Diplomat Associates or specifically not related to Diplomat Associates) approximately 20 percent of the time was related to the Diplomat Associates issue. Therefore, we shall allow petitioners 20 percent of the attorney's fees related to general matters.

The hours provided by each attorney by category are as follows:

| Category/ Attorney | Prior to 6/24/1998 | 6/24/1998 to 1/18/1999 | | | 1/19/1999 to 12/31/1999 | | | 1/1/2000 to 3/20/2000 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Disallowed (0%)** | | | | | | | | | | |
| Widen | 1.8 | -0- | 120 | -0- | 5.3 | $130 | -0- | 23.5 | $140 | -0- |
| McArthur | -- | 1.7 | 110 | -0- | -- | -- | -- | -- | -- | -- |
| Newman | -- | -- | -- | -- | -0- | 120 | -0- | 20.3 | 130 | -0- |
| Gibbons | -- | -- | -- | -- | -- | -- | -- | 0.3 | 140 | -0- |
| Total | 1.8 | 1.7 | -- | -0- | 5.3 | -- | -0- | 44.1 | -- | -0- |
| **Diplomat(100%)** | | | | | | | | | | |
| Widen | -- | -0- | 120 | -0- | 1.8 | 130 | $234 | 1 | 140 | $140 |
| McArthur | -- | 1.4 | 110 | $154 | -- | -- | -- | -- | -- | -- |
| Newman | -- | -- | -- | -- | 8 | 120 | 960 | -0- | 130 | -0- |
| Total | -- | 1.4 | -- | 154 | 9.8 | -- | 1,194 | 1 | -- | 140 |
| **General (20%)** | | | | | | | | | | |
| Widen | -- | 25.8 | 120 | 619.20 | 29.8 | 130 | 774.80 | 34.4 | 140 | 963.20 |
| McArthur | -- | 17.1 | 110 | 376.20 | -- | -- | -- | -- | -- | -- |
| Newman | -- | -- | -- | -- | 1.5 | 120 | 36 | 8.2 | 130 | 213.20 |
| Total | -- | 42.9 | -- | 995.40 | 31.3 | -- | 810.80 | 42.6 | -- | 1,176.40 |

| Dates | Hours | Fees Allowed |
|---|---|---|
| Disallowed | | |
| Prior to 6/24/1998 | 1.8 | -0- |
| 6/24/1998 to 1/18/1999 | 1.7 | |
| 1/19/1999 to 12/31/1999 | 5.3 | |
| 1/1/2000 to 3/20/2000 | 44.1 | |
| Diplomat(100%) | | |
| 6/24/1998 to 1/18/1999 | 1.4 | $154 |
| 1/19/1999 to 12/31/1999 | 9.8 | 1,194 |
| 1/1/2000 to 3/20/2000 | 1 | 140 |
| General | | |
| 6/24/1998 to 1/18/1999 | 42.9 | 995.40 |
| 1/19/1999 to 12/31/1999 | 31.3 | 810.80 |
| 1/1/2000 to 3/20/2000 | 42.6 | 1,176.40 |
| Total attorney fees allowed | | 4,470.60 |

Costs

Petitioners provided a billing statement for costs of $716.63. A charge of $1.88 is attributable to a long distance telephone call made February 25, 1998, prior to the issuance of the notice of deficiency. That cost is disallowed.

The costs include $6.25 for "Copy of judgment liens" filed with the county recorder and common pleas court dated March 17, 2000, and $426.86 for "Lexis/Westlaw" dated March 31, 2000. The judgment liens are to protect the attorneys' ability to collect their fees and are unrelated to the issues in this case. Additionally, the time sheets indicate that all of the legal research conducted during the year 2000 was unrelated to the Diplomat issue. Therefore, we allow petitioners none of the costs for judgment liens or "Lexis/Westlaw".

The remaining costs of $281.64 are not clearly related to the Diplomat issue. Therefore, we shall allow petitioners 20 percent ($56.33) of those costs.

Petitioners incurred costs $1,053 for 7.8 hours of paralegal services billed at the rate of $135 per hour from October 8 to December 3, 1998. This Court has awarded fees for paralegals and law clerks.[2] See Powers v. Commissioner, 100 T.C. 457, 493 (1993), revd. on other grounds 43 F.3d 172 (5th Cir. 1995); Malamed v. Commissioner, T.C. Memo. 1993-1. Nevertheless, we find the $135 hourly rate, which is higher than those for some of the attorneys, unreasonable. Considering that most of the paralegal work consisted of filing and document organization, we reduce the hourly billing rate to $60, one-half of the attorney rate. See, e.g., Powers v. Commissioner, supra; Pietro v. Commissioner, T.C. Memo. 1999-383. Additionally, since the only documents petitioners provided respondent to support the deductions related to the Diplomat issue was a copy of their legal argument, the paralegal work was related primarily to other issues. Therefore, we shall allocate only 10 percent of the paralegal time ($46.80) to the Diplomat issue.

---

[2]Counsel for petitioners included hourly fees for services provided by a paralegal in the statement for attorney's fees. We award attorney's fees only to attorneys as defined in sec. 7430(c)(3). See also Rules 200, 230(b)(7). We consider paralegal fees as part of the costs or expenses but not as attorney's fees.

Thus, we allow petitioners the following reasonable costs:

| Item | Cost | Cost Allowed |
|------|------|--------------|
| 2/25/98 telephone call | $1.88 | -0- |
| Lexis/Westlaw | 426.86 | -0- |
| Liens | 6.25 | -0- |
| General costs | 281.64 | $56.33 |
| Paralegal | 1,053.00 | 46.80 |
| Total | | 103.13 |

Accordingly, we award petitioners $4,470.60 for attorney's fees and $103.13 for expenses and costs.

To reflect the foregoing,

An appropriate order and decision will be entered.