T.C. Memo. 2002-212

UNITED STATES TAX COURT

SANDRA L. ANDARY-STERN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5460-01.                    Filed August 21, 2002.

Sandra L. Andary-Stern, pro se.

<u>Paul K. Voelker</u>, for respondent.

MEMORANDUM OPINION

BEGHE, <u>Judge</u>:  This matter is before us on petitioner's
motion for litigation and administrative costs under section
7430(a)[1].  The issues for decision are whether:  (1) Respondent's

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years at issue and
all Rule references are to the Tax Court Rules of Practice and
(continued...)

position was substantially justified, and (2) whether petitioner exhausted all administrative remedies available. We hold that (1) respondent's position was substantially justified, and (2) petitioner failed to exhaust all administrative remedies available. We therefore deny petitioner's motion.

Background

On February 16, 1993, respondent mailed a notice of deficiency to petitioner for the 1988 tax year; on October 19, 1993, respondent mailed notices of deficiency to petitioner for the 1987 and 1991 tax years. The address used by respondent on both these notices was 451 E. Nellis C2134, Las Vegas, NV 89110-5340 (the 451 E. Nellis address). On November 6, 1996, respondent mailed notices of deficiency for the 1992, 1993, and 1994 tax years to petitioner at 2850 Needles Highway #2913, Laughlin, NV, 89029-9998 (the 2850 Needles Highway address).

The notices of deficiency were based on substitute returns respondent prepared because petitioner, prior to the mailing of the notices, had not filed Federal income tax returns for any of the years at issue. The deficiencies were assessed between July 19, 1993 and April 28, 1997. On August 21, 1997, respondent

---

[1](...continued)
Procedure. All references to sec. 7430 are to that section as in effect when the petition was filed.

recorded a notice of a $34,950 Federal tax lien with the Clark County recorder in Las Vegas, Nevada.

In November 2000, petitioner applied for a position as pit floor supervisor with ETT Gaming. On November 19, 2000, as part of the application process, ETT Gaming purchased a consumer credit report on petitioner, which petitioner reviewed. The report showed the $34,950 Federal tax lien. Prior to reviewing the credit report, petitioner was unaware of the Federal tax lien.

On December 4, 2000, petitioner asked for help from the Taxpayer Advocate Service in removing the Federal tax lien. The Taxpayer Advocate Service arranged for petitioner to prepare returns for each of the years for which respondent had assessed a deficiency. Petitioner prepared Forms 1040, Individual Income Tax Return, for 1987, 1988, and 1991 and joint returns for 1992, 1993, and 1994. On March 29, 2001, petitioner submitted the returns to the Taxpayer Advocate Service, which forwarded them to the appropriate Internal Revenue Service center for processing. Processing included abating the previous assessments and assessing the amounts shown on the returns prepared by petitioner. It does not appear that petitioner submitted any payment for the taxes shown on the returns she prepared.[2]

---

[2]The returns prepared by petitioner show much lower tax
(continued...)

On April 19, 2001, petitioner filed a petition for the 1987 through 1994 tax years.[3]  The Court waived the filing fee.  On May 7, 2001, petitioner filed a motion to dismiss for lack of jurisdiction for the tax years 1987 through 1994.  Petitioner's motion alleged that the notices of deficiency were not mailed to petitioner's last known address, and that respondent had reason to know petitioner changed her address because of Forms W-2, Wage and Tax Statement, filed by petitioner's former employers.  The petition went on to state that petitioner was unable to work after her last job in 1996, until after approximately November 2000, when she applied for a position with ETT Gaming.  According to petitioner, she was not hired by ETT Gaming because of the Federal tax lien, and the lien had prevented her from securing employment with other employers.

The Court directed respondent to respond to petitioner's motion by June 4, 2001.  On June 4, 2001, respondent filed a motion for extension of time to respond, stating that more time was needed for the investigation.  The Court granted the extension and ordered respondent to respond by August 4, 2001.

---

[2](...continued)
liabilities than those prepared by respondent.  For example, respondent's 1988 return shows a tax of $3,627 while petitioner's return shows $195.

[3]The petition was with respect to the years 1987-94 inclusive.  Respondent's assessments are with respect to 1987, 1988, 1991, 1992, 1993, and 1994 years.

On July 27, 2001, respondent filed a motion to extend further the time to respond to petitioner's motion. Respondent's motion stated that respondent's records indicated that the last return filed by petitioner prior to 1996 was for 1985, that petitioner had several address changes, and that respondent was attempting to retrieve documents that would show the addresses for petitioner as of the dates the notices of deficiency were mailed. The Court granted respondent's motion and ordered respondent to respond by September 14, 2001.

On September 6, 2001, respondent sent petitioner a certificate of release of Federal tax lien, which petitioner recorded on September 27, 2001.

On September 18, 2001, respondent filed a notice of no objection to petitioner's motion to dismiss for lack of jurisdiction. Respondent's notice stated that respondent did not object to petitioner's motion to dismiss for lack of jurisdiction with respect to 1987, 1988, 1991, 1992, 1993, and 1994 on the ground that the notices of deficiency were not mailed to petitioner's last known address. Respondent moved to dismiss as to 1989 and 1990 on the ground that respondent had not made any determination of a deficiency in petitioner's income tax for either of those years. On September 19, 2001, we granted petitioner's motion as to 1987, 1988, 1991, 1992, 1993, and 1994 on the ground that the notices of deficiency for those years were

not mailed to petitioner's last known address. On October 15, 2001, we granted respondent's motion to dismiss as to 1989 and 1990 on the ground that respondent had not issued a notice of deficiency or made any other determination that would confer jurisdiction on the Court.

On January 14, 2002, petitioner filed a motion for litigation and administrative costs. The motion states that petitioner's cost of litigating her claim was $8,985. Petitioner states that she borrowed $8,800 from her parents to "maintain a location and the ability to litigate", and that she incurred $186 in postage, photocopying, and typewriter costs.

On January 14, 2002, the Court vacated its order of dismissal for lack of jurisdiction so that the disposition of petitioner's motion for litigation and administrative costs would be included in the decision entered in the case pursuant to Rule 232(f).

On March 4, 2002, the Court filed a letter from petitioner as petitioner's motion to restrain assessment and collection. Petitioner's motion states that she received notices of intent to levy for 1993 and 1994 without having received notice that any tax was due and owing. On March 21, 2002, petitioner filed a first supplement restating much of what was in her original motion to restrain assessment and collection, and on March 25, 2002, she filed a second supplement. The second supplement

states that petitioner received a notice of intent to levy for 1991 when her return showed she was entitled to a refund. On April 15, 2002, petitioner filed a third supplement, which states that petitioner had not received responses to repeated phone calls to respondent regarding the proposed levies. On April 18, 2002, petitioner filed a fourth supplement in which petitioner objects to the imposition of a penalty and interest on her 1992 tax liability.

On April 1, 2002, respondent filed a response to petitioner's motion for litigation and administrative costs. Respondent's response states that respondent agrees that petitioner substantially prevailed but contends that respondent's position was substantially justified and that petitioner failed to exhaust all administrative remedies.

On April 11, 2002, respondent filed a response to petitioner's motion to restrain assessment and collection. Respondent stated that petitioner's motion was with respect to 1993 and 1994. Respondent informed the Court that the deficiencies previously assessed for 1993 and 1994 were abated, that respondent assessed the amounts shown on joint returns of petitioner and her husband for 1993 and 1994, and that the notice of intent to levy was with respect to the amount shown on petitioner's return, plus penalties and interest. Respondent

stated that the Court does not have jurisdiction to enjoin assessment and collection because no deficiency within the meaning of section 6211(a) had been asserted.

On April 15, 2002, petitioner filed a response to respondent's response to petitioner's motion for administrative and litigation costs. Petitioner's response states that respondent's position was not substantially justified because respondent sent the notices of deficiency to incorrect or "fictitious" addresses.

On April 22, 2002, petitioner filed an objection to respondent's response to petitioner's motion to restrain assessment and collection. Petitioner said she never received a notice of an amount owed for 1993 and 1994; petitioner asserted respondent withheld the notices as a way to collect penalties and interest.

On May 17, 2002, the Court denied petitioner's motion to restrain assessment and collection, as supplemented. In denying petitioner's motion, we stated that our jurisdiction to enjoin assessment and collection is limited to matters over which we have jurisdiction. We concluded that because we lack jurisdiction of the matters set forth in the petition filed in this case, we have no authority to enjoin the assessments pertaining to petitioner's 1987, 1988, 1991, 1992, 1993, and 1994 taxable years.

## Discussion

The driving force of petitioner's prayers for relief seems to be the adverse effect of the tax lien on her ability to obtain employment in the Nevada gaming industry. It is common practice in the Nevada gaming industry to run credit checks on prospective employees who will be handling large amounts of cash and to hire only those whose credit is unblemished. ETT Gaming, among others who checked petitioner's credit, apparently regarded the Federal tax lien disclosed by the report as a blemish. Petitioner, who has worked in the Nevada gaming industry since 1976, blames the adverse credit report for her inability to find work, and we have no reason to believe otherwise. Although petitioner's prayers for relief are wrapped in a request for administrative and litigation costs, petitioner's motion papers suggest she is actually complaining about consequential damages for which the tax law provides no relief.

Whatever the source of petitioner's request, she cannot prevail in this proceeding. Before analyzing petitioner's request for costs under section 7430 and setting forth the technical grounds for denying her motion, we explain petitioner's role in causing her predicament.

I.

"The greatness of our nation is in no small part due to the willingness of our citizens to honestly and fairly participate in our tax collection system". Hatfield v. Commissioner, 68 T.C. 895, 899 (1977). The method by which citizens complete the initial step of their annual participation in our tax collection system is, of course, to self-assess their income tax liabilities by filing income tax returns, and by paying the liabilities shown thereon. See Reif v. Commissioner, 77 T.C. 1169, 1179 (1981).

In the case at hand, the originating cause of petitioner's problems is her failure to file timely Federal income tax returns for the years 1987, 1988, 1991, 1992, 1993, and 1994. Even though petitioner was delinquent in not filing returns and paying her tax liabilities, her employers and other third parties filed information returns indicating she had earned wages and received unemployment compensation and gambling winnings. From the information returns, respondent concluded that petitioner was required to file returns for the years at issue and undertook to prepare substitute returns on her behalf.

The Commissioner's authority to prepare substitute returns derives from section 6020(b)(1), which provides that if "any person fails to make any return required by any internal revenue law or regulation * * * the Secretary shall make such return from

his own knowledge and from such information he can obtain through testimony or otherwise."

Petitioner points out that the tax liabilities on the returns she belatedly prepared and filed are substantially less than those prepared by respondent, and that some of her returns even show refunds. By focusing on what respondent did, or should have done, petitioner has lost sight of her responsibility to tell respondent what her tax liability was for 1987, 1988, 1991, 1992, 1993, and 1994 and to make payments to the extent her liabilities had not been satisfied by withholding at the source.[4]

In any event, the above-quoted language of section 6020(b) makes clear that the Commissioner is not charged with preparing a perfectly accurate return. The Commissioner is required only to do the best he can with the information available to him, in the absence of a return prepared and filed by the taxpayer.

A substitute return prepared by the Commissioner gives rise to a deficiency equal to the tax liability shown on the return, and the deficiency procedures must be followed prior to assessment. Spurlock v. Commissioner, 118 T.C. 155 (2002).

---

[4]When petitioner did file her tax returns on Mar. 29, 2001, she did not include a payment for at least three of the years at issue, 1992, 1993, and 1994. Consequently, respondent assessed the amounts shown on petitioner's returns plus penalties for late filing and failure to pay, as well as interest. It is unclear whether petitioner has paid her tax liabilities for any of the years at issue.

Respondent therefore sent notices of deficiency to petitioner for each of the years a substitute return was prepared.

When a notice of deficiency is mailed, the taxpayer has 90 days to file a petition with the Court for redetermination of the deficiency. Sec. 6213(a). During the 90-day period, the Commissioner is precluded from assessing a deficiency or instituting collection proceedings until the expiration of the 90-day period. Id. If a petition has been filed, the restrictions on assessment and collection are in effect until the decision of the Court has become final. Id. In the case at hand, petitioner did not file a petition within the 90-day period, and respondent proceeded with assessment and collection.[5]

Respondent assessed the amounts shown on the substitute returns after the 90-day period expired. "Assessment" is effected by the recording of the taxpayer's liability in the appropriate office of the Commissioner. Sec. 6203. After recording the taxpayer's liability, respondent may proceed with collection by giving notice to the taxpayer liable for the unpaid tax, stating the amount and demanding payment. Such notice and demand is to be given "as soon as practicable, and within 60 days," of the assessment. Sec. 6303(a). The so-called notice

---

[5]As discussed in connection with our analysis of petitioner's request for administrative and litigation costs, infra, petitioner did not file a petition in response to any of the notices of deficiency. Respondent concedes that he did not mail the notices to petitioner's last known address.

and demand is required to be sent to the taxpayer's last known address. Id.

When a taxpayer fails to pay the amount assessed within 10 days of the notice and demand, a Federal tax lien arises, and a notice of the lien may be filed to inform potential purchasers of the taxpayer's property or creditors of the taxpayer that the Federal Government has an interest in the taxpayer's property. Secs. 6321, 6323(a), 6331(a).

In her motion papers in this proceeding, petitioner has repeatedly complained that she never received notice of any tax liability and only discovered the tax lien when a prospective employer ran a credit check. The thrust of petitioner's argument is that if she did not receive notice and demand, a statutory prerequisite to collection was missing and collection could not go forward. Sec. 6321. Indeed, collection did not go forward. After petitioner complained to respondent about the tax lien, respondent abated the amounts assessed pursuant to the substitute returns, assessed the amounts shown on the returns prepared by petitioner, and removed the lien.

Petitioner did not discover the Federal tax lien until 3 years after it was filed,[6] and she blames it for her inability to

---

[6]In the IRS Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 6401, 112 Stat. 746, Congress enacted sec. 6320(a), which provides that respondent is required to give notice within 5 business days of the filing of the notice of lien. The notice is required to be left at the taxpayer's

(continued...)

get a job in the Nevada gaming industry.  However the lien and petitioner's adverse credit report may have contributed to her inability to secure employment, the originating cause of petitioner's problems was her failure to fulfill her obligations to prepare and file returns for the years at issue and to pay her tax liabilities.

## II.

To be entitled to an award of litigation costs under section 7430, a taxpayer must, among other things:  (1) Be the "prevailing party", (2) not have unreasonably protracted the proceedings, and (3) have exhausted all administrative remedies available in the Internal Revenue Service.  Sec. 7430(a) and (b). Respondent contends that petitioner does not satisfy the first and third requirements.  We agree with respondent.

To be a prevailing party, the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or issues presented, and satisfy the applicable net worth requirement.  Sec. 7430(c)(4)(A).  However, the taxpayer is not considered the prevailing party if the Commissioner can establish that his position in the proceedings

---

[6](...continued)
dwelling or place of business, or sent to the taxpayer's last known address.  Sec. 6320(a).  Because notice of the tax lien in the case at hand was filed prior to the effective date of RRA 1998, petitioner is not entitled to its protections.

was substantially justified. Sec. 7430(c)(4)(B). Respondent concedes that petitioner prevailed with respect to the issues presented and meets the applicable net worth requirement but contends that his position was substantially justified.

Whether respondent's position was substantially justified is to be resolved by applying a reasonableness standard. Pierce v. Underwood, 487 U.S. 552, 564 (1988); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). Respondent's position is reasonable if the position had a reasonable basis in both fact and law. Norgaard v. Commissioner, 939 F.2d 874, 881 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390. The fact that respondent concedes a case does not automatically mean that his position was not substantially justified. Sokol v. Commissioner, 92 T.C. 760, 767 (1989). In determining the reasonableness of respondent's position, the Court may consider all relevant factors. Rutana v. Commissioner, 88 T.C. 1329, 1333 (1987).

To decide whether respondent's position was substantially justified, the Court must first identify when respondent is considered to have taken a position and then decide whether the position taken from that day forward was substantially justified. In general, we bifurcate our analysis and consider separately the positions taken in the administrative proceeding and the judicial proceeding. Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th

Cir. 1992), affg. in part, revg. in part, and remanding T.C. Memo. 1991-144. Respondent ordinarily takes a position in an administrative proceeding when he issues a statutory notice of deficiency, see sec. 7430(c)(7)(B); in a Court proceeding, respondent takes a position when he files an answer to a petition, Huffman v. Commissioner, supra.

In the case at hand, the position we scrutinize against the substantial justification standard, in both the administrative and Court proceedings, is whether the notices of deficiency were mailed to petitioner's last known address.

Respondent first took the position that the notices of deficiency were sent to petitioner's last known address when he mailed the notices. Sec. 7430(c)(7)(B). Petitioner contends in her motion papers that the notices of deficiency were sent to incorrect or fictitious addresses.

Petitioner states that the 451 E. Nellis address, to which respondent mailed notices of deficiency for 1987, 1988, and 1991, was incorrect on two counts. First, according to petitioner, there is no E. Nellis in Las Vegas, the street petitioner lived on was 451 N. Nellis. Second, the unit on the address used by respondent, C2134, was incorrect; petitioner lived in unit 01094.

Petitioner also points out that the 2850 Needles Highway address, to which respondent mailed the 1992, 1993, and 1994 notices, was incorrect. According to petitioner, respondent used

mailbox number 2913, when the correct number was 29136. In the notice of no objection to petitioner's motion to dismiss, respondent conceded that the notices of deficiency were not mailed to petitioner's last known address.

Petitioner contends that mailing the notices of deficiency to the wrong addresses was unreasonable because respondent should have been able to glean her correct addresses from various Forms W-2 filed by her former employers.[7]

In determining a taxpayer's "last known address" we have repeatedly held that the burden is on the taxpayer to provide the Commissioner with clear and concise notification of her new address. Pyo v. Commissioner, 83 T.C. 626, 636 (1984); Mollet v. Commissioner, 82 T.C. 618, 623 (1984). While the Commissioner must exercise reasonable diligence in ascertaining the taxpayer's correct address, administrative realities demand that the burden necessarily falls upon the taxpayer to keep respondent informed of his or her correct address or "accept the consequences". Alta Sierra Vista, Inc. v. Commissioner, 62 T.C. 367, 374 (1974).

Two relevant factors that influence our decision are

---

[7]Petitioner's motion papers reveal that she frequently changed addresses and employers. Two Forms W-2 filed by former employers for 1993 have different addresses: 1832 Merchant # 103, Sparks, NV, and 3702 S. Virginia G12-243, Reno, NV. A Form W-2 filed in 1994 by another employer shows petitioner's address as 2850 Needles # 29136, Laughlin, NV. Finally, a 1995 Form W-2, also filed by a different employer, shows petitioner's address as 6200 Meadowood, Reno, NV.

petitioner's own unreasonable conduct, the failure to file returns or to otherwise notify respondent of any address changes, and respondent's conduct throughout the course of the administrative proceeding, which we find was reasonable.

Petitioner states that she "had no knowledge of any taxes owed and IRS did nothing to inform [her] of any taxes owed." It bears repeating that our scheme of taxation is premised on "self-assessment" through the filing of returns, Sloan v. Commissioner, 102 T.C. 137, 146 (1994), affd. 53 F.3d 799 (7th Cir. 1995), and it is the taxpayer's obligation to inform the Commissioner of taxes owed. Petitioner emphasizes that the Forms W-2 filed by her former employers had the correct addresses. It therefore follows that petitioner received the Forms W-2 and that petitioner knew or should have known she was required to file returns. By failing to file returns, as the law requires her to do, or to otherwise notify respondent of her address changes, petitioner bears much of the responsibility for not having received the notices of deficiency.

Respondent acted reasonably when petitioner brought to his attention that she had not received the notices of deficiency. When petitioner contacted the Taxpayer Advocate Service in December 2000, the period of limitations on assessment had not started to run because petitioner had not filed returns. Sec. 6501(c)(3). Accordingly, respondent could have reissued the

notices of deficiency to petitioner and forced her to litigate her tax liabilities. Instead, respondent helped petitioner to prepare the returns she belatedly filed on March 29, 2001, abated the amounts previously assessed, and assessed the amounts petitioner showed on the returns she prepared. At no point in the administrative process did respondent maintain that the notices of deficiency were sent to petitioner's last known address.

In the proceedings before the Court, respondent was substantially justified. Respondent formally took a position in the proceedings before the Court when he filed the notice of no objection to petitioner's motion to dismiss for lack of jurisdiction. See Bertolino v. Commissioner, 930 F.2d 759, 761 (9th Cir. 1991). For purposes of section 7430 and the question whether respondent's position was substantially justified, respondent is given a reasonable period of time to resolve factual issues after receiving all relevant information. Sokol v. Commissioner, 92 T.C. at 765 n.10; Johnson v. Commissioner, T.C. Memo. 1990-542. In the matter before us, respondent never took the position that the notices of deficiency were mailed to petitioner's last known address. Respondent did not file an answer disputing petitioner's contention or otherwise contend that the notices of deficiency were mailed to petitioner's last known address. Respondent investigated the matter and

subsequently conceded that he could not establish that the notices of deficiency were mailed to petitioner's last known address.  Respondent's concession took the form of a notice of no objection to petitioner's motion to dismiss with respect to all of the years for which a notice of deficiency was issued. Respondent's position was not unreasonable.

Respondent also contends that petitioner did not exhaust all administrative remedies available.  Section 7430(b)(1) provides that a judgment for reasonable litigation costs shall not be awarded unless the Court determines the party has exhausted all administrative remedies available to her within the Internal Revenue Service.  According to respondent, at the time petitioner filed her petition, she had been granted administrative reconsideration, making the filing of a petition entirely unnecessary.  We agree with respondent.

In the case at hand, petitioner initiated the administrative proceeding when she contacted the Taxpayer Advocate Service on December 4, 2000, requesting relief from assessments.  The Taxpayer's Advocate arranged for petitioner to be given audit reconsideration which included processing the late-filed returns petitioner filed on March 29, 2001, abating the amounts previously assessed, and assessing the amounts shown on petitioner's returns.

Petitioner filed her petition in the case at hand on April 19, 2001, only 21 days after she filed her returns for processing. Twenty-one days is not a reasonable time for respondent to have completed the administrative proceeding initiated by petitioner. Respondent was required to process petitioner's returns, abate the amounts previously assessed, assess the amounts shown by petitioner, and credit petitioner's accounts for the amounts that were assessed pursuant to the returns prepared by respondent. By failing to allow a reasonable time for respondent to process her returns and adjust her accounts before filing a petition, petitioner failed to let the administrative proceeding run its course. Therefore, we hold that petitioner failed to exhaust an administrative remedy that was available.

## III.

For completeness, we address the reasonableness of the litigation costs claimed by petitioner. Section 7430(c)(1) provides that the term "reasonable litigation costs" includes reasonable court costs, and, based on prevailing market rates for the kind or quality of services furnished, the reasonable expenses for expert witnesses, and reasonable fees paid for the services of attorneys.

Petitioner states that she borrowed the $8,800 from her parents to "maintain a location and the ability to litigate." It

is not clear from that vague statement what costs petitioner incurred and is seeking to recover. Petitioner has been pro se throughout the proceedings and has not paid for the services of any attorneys. It is well settled that a taxpayer cannot recover attorney's fees for representing herself, even if she happens to be an attorney, which petitioner is not. Frisch v. Commissioner, 87 T.C. 838 (1986).

If it is living expenses for which petitioner seeks reimbursement, living expenses are not costs for which section 7430(c) allows recovery. Section 7430 does not provide for the recovery of a taxpayer's living expenses; she would have incurred those expenses whether she was contesting her tax liability or not. Petitioner's lack of income from a job to pay living expenses and the resulting need to borrow from her parents, the possible adverse effect of the tax lien on her credit and ability to obtain employment, identify the so-called consequential damages for which neither section 7430 nor any other relevant statutory provision allows relief. See Weiner v. IRS, 986 F.2d 12, 13 (2d Cir. 1993).

Petitioner has also requested $186 for long-distance calls to respondent's Ogden, Utah, and Phoenix, Arizona, offices, postage, photocopying, and typewriter rental costs. However, petitioner provided no receipts or other substantiation and no allocation of the total cost among the various items. Had petitioner prevailed on the "substantially justified" and

"administrative remedies" issues, we might well have allowed a recovery of some portion of the $186, bearing heavily upon petitioner for her failure to itemize and substantiate her costs. See O'Bryon v. Commissioner, T.C. Memo. 2000-379 (applying the doctrine of Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930) to an award of costs under section 7430); see also Malamed v. Commissioner, T.C. Memo. 1993-1.  In any event, petitioner has not prevailed, and she is not entitled to recover any costs under section 7430.

In light of the foregoing,

An Appropriate Order and

Order of Dismissal for Lack of

Jurisdiction will be entered.